_____

CLINICAL INSIGHT, INC.,

                    Plaintiff,              11-CV-6019T

          v.                               **DECISION
                                           and ORDER**

LOUISVILLE CARDIOLOGY MEDICAL GROUP, PSC.,

                    Defendant.

_____

## INTRODUCTION

Plaintiff Clinical Insight, Inc., ("Clinical Insight") the owner of a computer software program known as "Pronto", brings this action against defendant Louisville Cardiology Medical Group, PSC, ("Louisville Cardiology" or "Louisville"), a former medical practice based in Louisville, Kentucky, claiming that Louisville Cardiology has breached a licensing agreement whereby Clinical Insight licensed the use of the Pronto software to the defendant. Clinical Insight claims that Louisville Cardiology has failed to pay annual license fees for its continued use of the software, and has violated the software licensing agreement by allowing third-parties to gain access to the software program. Clinical Insight further alleges that Louisville has infringed its copyright on the software by using the software without a valid license.

Louisville Cardiology denies plaintiff's claims, and brings a counterclaim alleging that Clinical Insight breached the licensing agreement by failing to provide full software functionality as promised in the licensing agreement. Specifically, defendant

claims that the plaintiff failed to provide a "billing module" that would have allowed the defendant to use the Pronto software to generate billing statements. Louisville Cardiology contends that the promised billing module was a key component of the software, and that the failure of Clinical Insight to provide a functional billing module was a significant breach of the parties' agreement.

Clinical Insight now moves for summary judgment on the issue of liability for its claims of breach of contract and copyright infringement. According to Clinical Insight, there are no material issues of fact in dispute, and it has demonstrated as a matter of law that Louisville violated the licensing agreement by failing to pay for the software and allowing the software to be used for the benefit of a third-party. Clinical Insight further claims it has demonstrated that Louisville infringed on its copyright by using Pronto without a license. Additionally, Clinical Insight seeks an injunction against Louisville requiring Louisville to return the Pronto software immediately.

Louisville cross-moves for summary judgment on its claim that Clinical Insight breached the licensing agreement by failing to provide a working billing module. Louisville claims that the undisputed facts demonstrate that Clinical Insight failed to provide a billing module that worked as promised by Clinical Insight, and therefore, as a matter of law, Louisville is entitled to damages for breach of contract.

For the reasons set forth below, I grant Clinical Insight's motion for summary judgment, deny Louisville's motion for judgment, and stay consideration of plaintiff's motion for injunctive relief pending the parties' response to an Order to Show Cause why such relief should not be granted.

<u>BACKGROUND</u>

Plaintiff Clinical Insight is the owner of a proprietary computer software program known as "Pronto." Pronto is "an electronic medical record software product designed for use by cardiologists." Complaint at ¶ 7. Pronto was conceived of and created by Dr. Karl Schwarz ("Schwarz" or "Dr. Schwarz") in the 1990's, and he continued to work on the software product through 2007. In 2004, Dr. Schwarz founded Clinical Insight with two other persons. In 2007, Dr. Schwarz left Clinical Insight. Clinical Insight applied for Copyright registration for the Pronto software, and the copyright for the software became registered effective in February, 2011.

According to Louisville Cardiology, it acted as a test site for the development of the Pronto Software during the early 2000's. Louisville claims that during this time, and prior to the formation of Clinical Insight in 2004, it purchased a multi-user license to use Pronto "in perpetuity" directly from Dr. Schwarz. <u>See</u> Defendant's Statement of Facts at ¶ 3; June 21, 2012 Affidavit of Karl Schwarz, M.D. at ¶ 5. Although the defendant claims that the

license it purchased allowed Louisville Cardiology to use any subsequent version of Pronto created by Dr. Schwarz, there is no written agreement evincing the terms of the alleged license agreement, and the only evidence in the record of the agreement, which was apparently an oral agreement, is Dr. Schwarz's statement that "prior to the formation of Clinical Insight, Louisville Cardiology purchased licenses for 47 concurrent users of Pronto. These 47 licences permitted Louisville Cardiology to use of [sic] Pronto in perpetuity." June 21, 2012 Affidavit of Karl Schwarz, M.D. a ¶ 5. There is no evidence with respect to the terms and conditions of the licenses allegedly purchased by Louisville, or the amount paid by Louisville for the licenses.

Notwithstanding the existence of the alleged multi-user perpetual license held by Louisville, in October, 2006, Louisville and Clinical Insight entered into a Licensing Agreement (the "Licensing Agreement," "Agreement," or "contract") pursuant to which Clinical Insight licensed Pronto to Louisville for a term of one year, automatically renewable unless canceled by either party. Specifically, the agreement provided that the software being licensed was: "Pronto; this includes any and all prior versions of the Pronto software." See Schedule A of the October 2006 Licensing Agreement between Clinical Insight and Louisville Cardiology at § I. (emphasis added). The Agreement further provided that the licensed software included an "Upgrade from the prior version(s) of

Pronto to the most current version of Pronto 'Pronto 4'" and two software "modules," "Pronto*Cardiology*" and "Pronto*Exchange*" <u>Id.</u> at § II.

According to Louisville, it entered into the licensing agreement because Clinical Insight promised to provide a billing module along with the Pronto software. Louisville contends that the purpose of the billing module was to allow Louisville to automatically create billing statements based on information entered into the Pronto Software. Louisville estimated that it could save at least $60,000 per year if the software could automatically generate billing statements, rather than having billing clerks transcribe the medical records into billing statements.

Under the terms of the Licensing Agreement, the license to use Pronto continued for as long as Louisville continued to purchase a Maintenance and Telephone Support Agreement pursuant to which Clinical Insight provided software updates, corrections, bug fixes, and live telephone support for software questions and concerns. Indeed, rather than paying an actual license fee of $1,500.00 per authorized user for the Pronto software, Louisville received a 100% credit for all licenses under the agreement for as long as Louisville continued to purchase the Maintenance and Telephone Support. Under the agreement signed by the parties, Louisville agreed to pay $19,050 for the initial one year term of telephone

support.  In December, 2006, Clinical Insight installed Pronto 4 on the computers of Louisville Cardiology, at which time the one-year license agreement began to run.  Shortly thereafter, the parties agreed to extend the one-year term by a month, and agreed that the term would expire on January 31, 2008.

Shortly after Pronto was installed, Louisville complained to Clinical Insight that the billing module was not yet fully functional.  The billing module was personally developed by Dr. Schwarz based on his understanding of what Louisville required of the software.  As of March, 2007, however, Louisville discovered that the billing module failed to export all billing codes contained in a medical record to a billing statement, and instead only exported a single billing code, thus generating a charge for only one diagnosis, where multiple charges may have been appropriate.  According to Dr. Schwarz, he had never been told by Louisville Cardiology that Louisville desired a billing module that could export multiple codes, and so he designed it to export only a single code.  June 21, 2012 Affidavit of Karl Schwarz, M.D. at ¶ 11.  Although Dr. Schwarz attempted to resolve the problem with the billing module, he resigned from the company in September, 2007 with the billing module still inoperative.

In light of Clinical Insight's inability to provide a working billing module, in December, 2007, Louisville informed Clinical Insight that it was terminating the Licensing Agreement.  Under the

express terms of the Licensing Agreement, Louisville could terminate the Agreement upon 30 days' written notice provided to Clinical Insight. See Licensing Agreement at § 12(a). Termination would only become effective, however, "upon receipt by Clinical Insight of all Software and Documentation including any copies . . . ." and certification in writing that all software and written materials have been returned. Id. at 12(a), (d). Just prior to the January 31, 2008 expiration of the initial one year term of the licensing agreement, however, on January 28, 2008, Clinical Insight billed Louisville for another year of Maintenance and Telephone Support for the Pronto software. Rather than charge $19,050 for the support agreement as it had the prior year, Clinical Insight charged Louisville $18,050 for the upcoming year, representing a $1,000.00 discount as a result of the billing module not working to Louisville's satisfaction. According to Clinical Insight, it continued to bill Louisville because Louisville had not returned the software and accompanying documentation as required under the Licensing Agreement.

Louisville objected to the invoice submitted by Clinical Insight on grounds that it had terminated the Licensing Agreement due to the fact that the billing module did not work. In March, 2008, Clinical Insight reduced the amount of the invoice to $15,167 in light Louisville's dissatisfaction with the billing module. In April, 2008, Louisville responded to Clinical Insight's offer by

stating that it would pay the invoice for the Telephone and Maintenance Agreement once the billing module worked to its satisfaction.  Despite refusing to pay for the Maintenance and Telephone Support Agreement, Louisville declined to return the software and continued to use the Pronto software.  Thereafter, during the summer of 2008, attorneys for each company became involved in the dispute, with an attorney for Clinical Insight demanding payment from Louisville for amounts owed, and an attorney for Louisville accusing Clinical Insight of breach of contract for failing to provide a billing module.

Following the exchange of letters between the parties' attorneys, the dispute laid dormant for a period of approximately two years.  During this period, there is no indication in the record that Clinical Insight made further attempts to collect any payments from Louisville, or that Louisville made any further demands regarding implementation of a billing module.  Thereafter, in November, 2010, Clinical Insight made a written demand of Louisville for license fees for the years 2008, 2009, and 2010. Louisville, however declined to pay the fees.  In December, 2010, Baptist Medical Associates, ("Baptist") a consortium and employer of physicians operating in the greater Louisville, Kentucky, metropolitan area, purchased the assets of Louisville Cardiology. According to Louisville, it has retained employees for the purpose of accessing medical records using the Pronto software so as not to

violate the provisions of the licensing agreement which prohibit third-parties from using the software.

In January, 2011, Clinical Insight instituted the instant action to recover fees allegedly owed under the Licensing Agreement, and to assert claims of copyright infringement. In response to plaintiff's Complaint, Louisville has filed a counterclaim seeking damages for breach of contract.

DISCUSSION

I.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. Scott v. Harris, 550 U.S. 372, 380 (2007). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. Scott, 550 U.S. at 380 (citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986)).

II.   <u>Plaintiff's Motion for summary Judgment</u>.

A.   Plaintiff has established that Louisville Breached the
     October 2006 Licensing Agreement by failing to pay its
     annual Maintenance and Support Fee and that defendant's
     <u>defenses are without merit</u>.

1.   <u>Breach of Contract</u>

Clinical Insight claims that Louisville breached the 2006
Licensing Agreement by failing to pay the annual maintenance and
support fees from 2008 onward, or, in the alternative to paying the
fee, returning all software and software documentation.

To state a claim for breach of contract under New York law, a
plaintiff must establish: (1) the existence of a valid contract,
(2) performance of the contract by the plaintiff; (3) breach of the
contract by the defendant; and (4) damages. <u>First Investors Corp.
v. Liberty Mut. Ins. Co.</u>, 152 F.3d 162, 168 (2nd Cir. 1998)(citing
<u>Rexnord Holdings, Inc. v. Bidermann</u>, 21 F.3d 522, 525 (2d
Cir.1994). For the reasons set forth below, I find that Clinical
Insight has established that Louisville breached the 2006 Licensing
Agreement.

a.   Plaintiff has Established the Existence of a Valid
     <u>Contract between Clinical Insight and Louisville</u>

There is no dispute that the parties entered into the October
2006 Licensing Agreement, and that the contract is valid.
Accordingly, I find that Clinical Insight has established the first
element of its claim for breach of contract.

b.  Plaintiff has Established that it Performed its
    <u>Obligations under the Contract</u>.

While there is no dispute as to the existence of a valid contract between the parties, the parties strongly disagree as to whether or not Clinical Insight satisfied its obligations under the contract. Specifically, Louisville claims that Clinical Insight failed to deliver a functional version of the Pronto billing module known as Pronto*Exchange*, and because it failed to deliver that one component of the entire software product, Clinical Insight failed to perform under the contract, and is therefore precluded from attempting to enforce the contract. I find, however, as a matter of law, that Clinical Insight satisfied its performance obligations under the contract such that it may pursue its breach of contract claims against Louisville.

Although the issue of whether or not a party has satisfactorily performed its obligations under a contract is typically a question of fact, (see <u>El-Saidi v. Oren</u>, 13 Misc.3d 138(A), 831 N.Y.S.2d 359 (Table) (N.Y.Sup.App.Term, October 27, 2006), where there is no dispute as to the material facts, judgment may be issued as a matter of law. Here, under the express, written terms of the Licensing Agreement, Clinical Insight was obligated to deliver to Louisville "software," and accompanying written documentation and manuals, and grant a license to Louisville to use the software. <u>See</u> Licensing Agreement at § 2. "Software" is defined in the Agreement as "Pronto" (including "any and all prior

versions of the Pronto software" and two software modules, "Pronto*Cardiology*" and "Pronto*Exchange.*") Licensing Agreement at Schedule A, §§ I, II. "Pronto*Exchange*" is the component of the Pronto Software suit that contains the billing module requested by Louisville. With respect to the operation of Pronto*Exchange*, Clinical Insight warranted that: "the Software will, for a period of 30 days after the date of its shipment to Licensee, operate substantially in accordance with the Documentation." Licensing Agreement at § 6(b). The License Agreement further explicitly stated, in bold letters, that: "CLINICAL INSIGHT DOES NOT WARRANT THAT THE FUNCTIONS PERFORMED BY THE SOFTWARE WILL MEET LICENSEE'S REQUIREMENTS . . . OR THAT ALL PROGRAM DEFECTS ARE CORRECTABLE." Licensing Agreement at § 6(e).

There is no dispute that Clinical Insight delivered the software described in the contract, and the licenses to use the software. Although Louisville claims that Pronto*Exchange* did not operate the way it expected the software to operate, in that the program imported only one billing code from the electronic notes in a patient's chart, there is no allegation or evidence that Pronto*Exchange* failed to operate "substantially in accordance with the Documentation" as it was required to under the terms of the contract. Rather, Clinical Insight has provided evidence that the billing module did in fact extract a billing code from a patient's electronic records and create a billing statement based on that

information, just as the documentation of the software explained it would do.[1] Louisville's expectation that the program would import multiple billing codes, and the software's failure to meet that expectation, does not establish that Clinical Insight failed in its performance under the contract, and, as stated in the contract language set forth above, is explicitly excluded from any warranty made by Clinical Insight. Because there is no dispute that the Pronto Software performed as stated in the documentation accompanying the software, I find that Louisville has failed to establish that Clinical Insight failed to perform under the terms of the contract.[2]

---

[1] Unrebutted evidence in the record indicates that Dr. Schwarz designed Pronto*Exchange* to work with, MicroMD, a software program used for creating billing statements which was used by Louisville. The creators of MicroMD Provided Dr. Schwarz with example files for the purpose of creating an interface for Pronto to work with MicroMD. Dr. Schwarz created an interface which allowed Pronto to automatically export a single billing code into MicroMD. Dr. Schwarz stated that he designed Pronto*Exchange* to replicate the MicroMD functionality, and that he was never told by Louisville prior to his writing the Pronto*Exchange* program that Louisville desired a program that could extract more than one billing code. Dr. Schwarz stated that his Pronto*Exchange* program worked perfectly in extracting a single billing code to create a billing statement.

[2] With respect to Louisville's claim that Clinical Insight made oral representations as to what the software would do, such oral representations are excluded by the parol evidence rule, and the plain language of the contract that the Licensing Agreement encompasses all representations made by the parties, and that there no representations or warranties other than those contained in the agreement.

Moreover, even if Clinical Insight had failed to perform under the contract, or had breached its obligations under the contract, Louisville cannot rely on the alleged failure of performance or breach as a defense to its decision to not continue to pay for the Pronto software. Where a party to a contract is faced with a breach by the other party, the non-breaching party has two options: it can either terminate the contract, or it can continue the contract and provide notice of the breach to the allegedly breaching party. See <u>Purchase Partners, LLC v. Carver Federal Sav. Bank</u>, 2012 WL 6641633 at *21 (S.D.N.Y., December 13, 2012)(<u>quoting Hallinan v. Republic Bank & Trust Co.</u>, 519 F.Supp.2d 340, 351 (S.D.N.Y.2007).

In the instant case, Louisville indicated in writing to Clinical Insight its *intent* to terminate the Licensing Agreement, but it failed to *actually* terminate the Agreement as required under the express terms of the Agreement. As stated above, Section 12 of the Licensing Agreement governs the manner in which either party could terminate the Agreement. Sections 12(a) and (d) provide that termination of the Agreement will only become effective upon "receipt by Clinical Insight of all Software and Documentation including any copies . . . ." and certification in writing that all software and written materials have been returned. It is undisputed, however, that Louisville never returned the Pronto

software or documentation, or certified in writing that it had done so. Accordingly, Louisville never terminated the agreement.

      c.    Plaintiff has established that Louisville Breached the <u>Licensing Agreement</u>.

Having determined that the parties had entered into a valid contract, and that Clinical Insight satisfied its performance obligations under the contract, the court must determine whether or not Louisville breached the Licensing Agreement. Here, the undisputed evidence contained in the record reveals that Louisville did in fact breach the Licensing Agreement by failing to effectively terminate the Agreement, and failing to pay for the software as required by the Agreement.

There is no dispute that Louisville, upon the expiration of the initial one-year licensing period, failed to return the Software, and failed to effectively terminate the agreement. Although Louisville claims that Clinical Insight's alleged breach of contract in failing to provide a working billing module somehow allowed Louisville to selectively breach portions of the Agreement without legal liability, there is no support for such a position under the law. As stated above, when faced with an alleged breach of contract, the non-breaching party can either continue under the contract and notify the breaching party of the breach, or it can terminate the contract. <u>Purchase Partners, LLC</u>, 2012 WL 6641633 at *21. Here, Louisville did neither. By failing to pay Clinical Insight the agreed upon fee, it did not continue under the

contract. By not returning the Pronto software and documentation, it failed to effectively terminate the agreement. Instead, Louisville took a third path: it continued to use the software but failed to pay for it. Such an act constitutes a breach of contract.[3]

Louisville contends that it did not breach the Licensing Agreement by continuing to use Pronto because prior to the creation of Clinical Insight, it had obtained from Dr. Schwarz a license to use Pronto Software in perpetuity. Specifically, Louisville claims that it entered into an oral agreement in 2004 with Dr. Schwarz in which it received 47 licenses to use Pronto in perpetuity. The only evidence of this agreement is a single statement by Dr. Schwarz that "prior to the formation of Clinical Insight, Louisville Cardiology purchased licenses for 47 concurrent users of Pronto. These 47 licenses permitted Louisville Cardiology to Use Pronto in perpetuity." June 21, 2012 Affidavit of Karl Schwarz, M.D. a ¶ 5. There is no written evidence of this agreement, nor is

---

[3] At the time Louisville expressed its intent to cancel the Licensing Agreement by declining to pay the annual Maintenance and Telephone support fee, Louisville seemed to recognize that cancellation of the contract would require it to return the software. John Campbell, the Director of Information Technology for Louisville, and the signatory to the Licensing Agreement on behalf of Louisville, emailed his Superior Karen Bell explaining that if Louisville elected to not pay the annual fee, or purchase a license, it would be required to return all Pronto software and cease its use. Despite recognizing this fact, Louisville neither paid the fee nor purchased a license, but continued to use the software.

there any explanation of the terms of the agreement, including the amount paid for the licenses, and whether the agreement included any right to upgrades of the Pronto Software.

However, regardless of whether or not Louisville entered into an oral agreement with Dr. Schwarz in 2004, the 2006 Licensing Agreement, by its explicit terms, supercedes any prior agreement between Dr. Schwarz and Louisville. As stated in Section 14(h) of the Licensing Agreement, "[t]his Agreement, together with all its Schedules, contains the entire understanding of the parties with respect to the transactions contemplated and <u>supercedes any prior agreements or understandings among the parties with respect to the subject matter hereof</u>. Licensing Agreement at § 14(h)(emphasis added). Moreover, the Licensing Agreement specifically licensed Pronto, including all prior versions of Pronto. <u>See</u> Licensing Agreement at Schedule A (I) (indicating that the software licensed under the Agreement was "Pronto," including "<u>any and all prior versions of the Pronto software</u>.")(emphasis added). It is thus clear from the terms of the 2006 Licensing Agreement that any right to use Pronto under any 2004 Oral agreement was extinguished by the 2006 Licensing Agreement. However, even if the right to use the prior version of Pronto was not extinguished, Louisville has failed to submit evidence that the 2004 oral agreement allowed it to use Pronto 4, or the modules included with Pronto 4; Pronto*Cardiology* and Pronto*Exchange*. Accordingly, I find that the alleged 2004

license to use a prior version of Pronto did not allow Louisville to continue to use Pronto 4, Pronto*Cardiology* and Pronto*Exchange* without paying the annual fees required under its contract with Clinical Insight.

        d.    Plaintiff has established damages resulting from defendant's breach of the Licensing Agrement.

Finally, although plaintiff seeks a trial on the issue of damages, it has established that it was damaged by Louisville's breach of the contract.  There is no dispute that under the contract, Louisville was obligated to pay an annual maintenance and support fee, and that Louisville has failed to pay the annual fee since 2008.  I therefore find that plaintiff has established entitlement to damages.

Because Clinical Insight has established that Louisville breached the 2006 Licensing Agreement, I grant plaintiff's motion for summary judgment on the issue of liability for breach of contract.

        2.    Defendant's defenses to plaintiff's Breach of Contract claims are without merit.

Louisville contends that even if it did breach the 2006 Licensing Agreement, plaintiff may not recover for the breach because Clinical Insight abandoned the contract, or, in the alternative, repudiated the contract.

        a.  Clinical Insight did not abandon the Licensing Agreement.

Under New York law, a contract may be abandoned only upon the mutual assent of the parties. Jones v. Hirschfeld, 348 F.Supp.2d 50, 59 (S.D.N.Y., 2004). Moreover, abandonment can only be established where there is affirmative, unequivocal conduct demonstrating a clear intent not to be bound by the contract. Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Management, L.P., 7 N.Y.3d 96, 104 (N.Y., 2006). While a failure to act may establish evidence of abandonment, the abandonment must nonetheless be mutual, voluntary, and unequivocal. See Id. (failure to act must "evince an intent not to claim a purported advantage.") In the instant case, neither party manifested an unequivocal intent to abandon the contract. Louisville continued to use the Pronto software after it stopped paying the annual fee required under the contract, and told Clinical Insight it would again pay the fee once the billing module performed as it intended the module to perform. Accordingly, Louisville's actions indicated that it wanted to continue using Pronto 4. Clinical Insight made repeated demands for payment, until the fall of 2008, thus evincing no intention of abandoning the contract. While Clinical Insight then waited two years before making yet another demand for payment, under New York law, there is no presumption of abandonment, and in the absence of unequivocal conduct demonstrating an intent to abandon the contract, the court can not find that Clinical Insight

abandoned the contract. C3 Media & Marketing Group, LLC v. Firstgate Internet, Inc., 419 F.Supp.2d 419, 433 (S.D.N.Y., 2005); (party asserting abandonment has burden of proving contract was abandoned as there is no presumption of abandonment under New York law.); Rosiny v. Schmidt, 587 N.Y.S.2d 929, 932 (N.Y.A.D. 1 Dept., 1992).

      b.   Clinical Insight did not repudiate the Licensing Agreement.

Louisville contends that Clinical Insight repudiated the contract by unilaterally modifying the contract so that it would no longer be obligated to provide Pronto*Exchange* to Louisville. According to Louisville, this modification constituted an acknowledgment by Clinical Insight that it was incapable of supplying a billing module that worked as Louisville desired, and is thus a repudiation of the contract. Louisville argues that because Clinical Insight repudiated the contract, plaintiff may not sue to enforce the contract's terms.

To establish the repudiation of a contract (also referred to as an anticipatory breach of contract) by an obligor, the party claiming repudiation must demonstrate that the obligor will either breach the contract, or has voluntarily engaged in contact that will cause or likely cause the obligor to breach the contract. Computer Possibilities Unlimited v. Mobil Oil Corp., 747 N.Y.S.2d 468, 474-75 (N.Y.A.D., 1st Dept., 2002).

Louisville, however, has failed to establish that Clinical Insight repudiated the contract. As stated above, Clinical Insight was obligated to supply a billing module that would "operate substantially in accordance with the [software] Documentation." Licensing Agreement at § 6(b). Louisville has introduced no evidence to suggest that Clinical Insight failed to supply such a software program. Rather, the undisputed facts in the record reveal that when Louisville objected that Pronto*Exchange* could not import multiple codes into billing statements, and Clinical Insight determined, after Dr. Schwarz left the company, that it could not modify Pronto*Exchange* to introduce that functionality, it offered to reduce the annual cost of Pronto by $1,000.00. This act does not, as a matter of law, constitute repudiation, as Clinical Insight was under no contractual obligation to provide a billing module that worked as Louisville hoped, but instead, was required only to provide a billing module that worked as the documentation stated it would work. Because the billing module worked in accordance with its written specification, failure to supply a more robust billing module does not constitute a breach of contract, and an offer to reduce the cost of the annual fee of the software does not constitute a repudiation of the contract.

Moreover, even if Louisville were able to establish an anticipatory breach of the contract by Clinical Insight, its remedy was to either terminate the contract, or to affirm the contract and

perform under the contract.  Computer Possibilities Unlimited, Inc., 747 N.Y.S.2d at 477 ("where one party to a contract repudiates its obligations thereunder, the other party may either treat the contract as terminated or, alternatively, affirm the contract, and, if the latter option is chosen, the nonrepudiating party is deemed to remain obligated to perform under the contract . . . .") As stated above, however, Louisville chose a third option, it neither terminated the contract (by returning the software) nor performed under the contract, (by paying the annual fee for the right to use the software).  Accordingly, Louisville cannot assert plaintiff's alleged repudiation as a defense to its breach of contract.

> B.    Plaintiff has Established that Louisville Breached the October 2006 Licensing Agreement by Assigning the Agreement to Baptist and Allowing Pronto to be used for the Benefit of Baptist.

Clinical Insight moves for summary judgment on its claim that Louisville violated the 2006 Licensing Agreement by assigning the Agreement to Baptist and allowing Pronto to be used for the benefit of Baptist.  Specifically, Clinical Insight alleges that Louisville, whose assets were sold to Baptist Medical Associates in 2010, allowed Pronto to be used by Baptist employees for the benefit of Baptist, and  assigned the Licensing Agreement to Baptist in violation of the Agreement's provision prohibiting assignment without the permission of Clinical Insight.

Louisville opposes plaintiff's motion on grounds that it has complied with the Licensing Agreement by retaining several employees whose sole function is to access the electronic medical records using the Pronto system. Louisville claims that by having employees of Louisville exclusively accessing the medical records stored on Pronto, it has not allowed unauthorized users to use the Pronto software, and it has not improperly assigned the software to Baptist. I find, however, that Louisville breached the Licensing Agreement by allowing Pronto to be used for the benefit of Baptist, and by assigning the Licensing Agreement to Baptist without first obtaining permission from Clinical Insight.

1. Louisville Improperly Assigned the Licensing Agreement to <u>Baptist</u>.

The Licensing Agreement provides in relevant part that Louisville, as the licensee of the software, "may not assign this Agreement without the prior written consent of Clinical Insight. For all purposes under this Agreement, any merger, consolidation, spin-off, <u>acquisition of</u> or change-in-control involving Licensee will be deemed an assignment. Any attempted assignment by Licensee will be invalid." 2006 Licensing Agreement at § 14(d)(emphasis added). It is undisputed that the assets of Louisville were purchased by Baptist when Baptist acquired Louisville in 2010, and that Clinical Insight did not give Louisville written permission to assign the Licensing Agreement. Under the clear, unambiguous language of the Licensing Agreement, the acquisition of Louisville

by Baptist automatically constitutes an assignment. Because Louisville did not obtain permission to assign the Licensing Agreement prior to its acquisition, Louisville has breached the Licensing Agreement.

      2.    Louisville has allowed Baptist to benefit from Use of the <u>Pronto Software</u>.

Louisville contends that it has not assigned the Licensing Agreement to Baptist or allowed unauthorized users to use Pronto because it has hired ten employees whose sole responsibility is to access records of former Louisville patients to avoid use of Pronto by unauthorized users. Despite these efforts, however, Louisville has breached the Licensing Agreement. Initially, as stated above, the acquisition of Louisville by Baptist constitutes an assignment of the Agreement (which was made without the permission of Clinical Insight) under the Contract, regardless of whether or not Baptist employees are directly accessing the software. Moreover, Section 3(a) of the Licensing Agreement provides that the Software may be used only for Louisville's "own internal use." It is undisputed, however, that since the purchase of Louisville by Baptist, all former Louisville patients are now Baptist patients, and the patient records accessed by Louisville employees are provided to Baptist doctors for the purpose of treating these new Baptist patients. By utilizing the software to provide Baptist doctors with patient records to treat Baptist patients, Louisville is not

using the software "only for its own internal use," and therefore, has breached the Licensing Agreement.

Because Louisville breached the Licensing Agreement by assigning the Agreement to Baptist without first obtaining Clinical Insight's permission, and because Louisville has breached the portion of the Licensing Agreement providing that Pronto may be used only for Louisville's own internal use, I grant plaintiff's motion for summary judgment on the issue of liability for defendant's breach of the assignment and use provisions of the 2006 Licensing Agreement.

III. Clinical Insight has Established its Claim for Copyright <u>Infringement</u>.

Clinical Insight alleges that Louisville has infringed on its copyright for Pronto and Pronto*Exchange* by using those programs without a valid license, and moves for summary judgment of liability on its claim. "To state a claim for copyright infringement, a plaintiff must establish that it owns a valid copyright in the work at issue and that the defendant violated one of the exclusive rights the plaintiff holds in the work." <u>Capitol Records, LLC v. ReDigi Inc.</u>, --- F.Supp.2d ----, 2013 WL 1286134, at *4 (S.D.N.Y. March 30, 2013); <u>Patrick Collins, Inc. v. John Doe 1</u>, --- F.Supp.2d ----, 2013 WL 2177787 at *6 (E.D.N.Y., May 18, 2013).

In the instant case it is undisputed that Clinical Insight owns a valid copyright on the Pronto Software, and received

registration of the copyright effective February 24, 2011. It is further undisputed that Louisville has continued to use Pronto without a license or other legal authorization to do so since 2008, when it breached the Licensing Agreement by failing to pay the annual Maintenance and Telephone Support fee. Continued use of a copyrighted work after a license allowing for lawful use of the work expires states a claim for copyright infringement. <u>See Kanakos v. MX Trading Corp.</u>, 1981 WL 1377 at *2 (S.D.N.Y., September 16, 1981)("Where a licensee utilizes a copyrighted work in a manner or to an extent not authorized by the license agreement, the licensee's position is no different from that of an infringer having no contractual relationship with the holder of the copyright. In both cases, the resulting cause of action is one for copyright infringement, and the claims against both arise under the copyright statutes."); <u>Kamakazi Music Corp. v. Robbins Music Corp.</u>, 684 F.2d 228, 230 (once licensee's license to publish copyrighted works expired, continued publication of work subjected licensee to liability for copyright infringement).

Louisville contends that it may not be sued for copyright infringement because, at worst, Louisville merely breached a covenant in the Licensing Agreement which does not give rise to a claim for copyright infringement. In support of this argument, Louisville relies on <u>Graham v.  James</u>, where the Second Circuit Court of Appeals held that non-payment of royalties pursuant to an

oral licensing agreement did not terminate the license agreement, and merely allowed the licensor to assert a breach of contract claim against the licensee. See Graham v. James, 144 F.3d 229 (2nd Cir. 1998). Graham, however, does not address the situation presented in this case, where the licensing agreement expired by its own terms, and the licensee refused to either renew the agreement or return the copyrighted material upon the cancellation of the agreement. Instead, as the several courts of this Circuit have found, use of copyrighted material after a license to use the material has expired gives rise to claim for copyright infringement. Marshall v. New Kids On The Block Partnership, 780 F.Supp. 1005, 1009 (S.D.N.Y., 1991)("Case law in this Circuit indicates that a copyright licensee can make himself a 'stranger' to the licensor by using the copyrighted material in a manner that exceeds either the duration or the scope of the license."); Wu v. Pearson Educ., Inc., 277 F.R.D. 255, 267 (S.D.N.Y., 2011)("After expiration of a license, further exercise by the licensee of the licensed exploitation rights constitutes copyright infringement." (quoting NIMMER ON COPYRIGHT § 10.15.); Basquiat v. David DeSanctis Contemporary Art, Inc., 2010 WL 4450972 at *1 (S.D.N.Y., October 29, 2010)("A sale by a licensee after the expiration of a license may amount to copyright infringement.") Because Clinical Insight has established that Louisville used Pronto after its license to use the software expired, I grant plaintiff's motion for summary

judgment on the issue of liability for Louisville's use of Pronto after the initial one-year licensing term expired.  I make no finding with respect to Pronto*Exchange*, as there is a question of fact as to whether Louisville used Pronto*Exchange* beyond the initial one-year period.

Louisville contends that Clinical Insight is estopped from raising a claim for copyright infringement because Clinical Insight "induced" Louisville to infringe the copyright by acquiescing to Louisville's infringement.   In support of this contention, Louisville claims that Clinical Insight was not diligent in timely bringing an action for infringement, and therefore, Clinical Insight lost the right to enforce its copyright claim against Louisville.   Louisville also claims that Clinical Insight either abandoned the copyright or granted Louisville an implied license to use Pronto by failing to object to its use from September, 2008 to November 2010.

None of these defenses has merit.  To establish an estoppel defense in the context of a copyright claim, a defendant must demonstrate that:

> (1) plaintiff had knowledge of the defendant's infringing conduct; (2) plaintiff either (a) intended that defendant rely on plaintiff's acts or omissions suggesting authorization, or (b) acted or failed to act in such a manner that defendant had a right to believe it was intended to rely on plaintiff's conduct; (3) defendant was ignorant of the true facts; and (4) defendant relied on plaintiff's conduct to its detriment.

<u>Psihoyos v. Pearson Educ., Inc.</u>, 855 F.Supp.2d 103, 129 (S.D.N.Y., 2012)(quoting <u>SimplexGrinnell LP v. Integrated Sys. & Power, Inc.</u>, 642 F.Supp.2d 167, 194 (S.D.N.Y.2009)).  In the instant case, there is no evidence or suggestion that Louisville was ignorant of any facts regarding the dispute over the Licensing Agreement between Louisville and Clinical Insight, or that it didn't know that its license to use the Pronto Software expired in January, 2008.  For a period of nine months, Clinical Insight clearly indicated that it did not acquiesce to Louisville's unlicensed use of Pronto, and never gave Louisville any indication, impliedly or overtly, that it had abandoned its rights to enforce the Licensing Agreement or its copyright claims.  While Clinical Insight then made no contact with Louisville from September 2008 to November 2010, such conduct does not evince, as a matter of law, any intent to abandon its copyright, particularly in light of the fact that Clinical Insight engaged in no affirmative conduct suggesting an intent to abandon the copyright or acquiesce to Louisville's unlicensed use of the Pronto software.

With respect to defendant's claim that Clinical Insight granted Louisville an implied license to use Pronto by failing to communicate with Louisville for 27 months after both parties threatened the other with legal action for breaching the Licensing Agreement, I find that such a course of conduct does not suggest the creation of an implied license.  An implied license is a

"creature of contract law" and the circumstances under which an implied license may be found are "'narrow.'" <u>Associated Press v. Meltwater U.S. Holdings, Inc.</u>, --- F.Supp.2d ----, 2013 WL 1153979 at * 22 (S.D.N.Y., March 21, 2013). "[C]ourts will find an implied license where 'the totality of the parties' conduct indicates an intent to grant' permission to use the copyrighted work . . . ." <u>Coach, Inc. v. Kmart Corporations</u>, 756 F.Supp.2d 421, 427 (S.D.N.Y., 2010). In this case, there is no evidence of any intent on the part of Clinical Insight to grant an implied license to Louisville for the use of the Pronto Software.

Because there is no evidence that plaintiff acquiesced to the unlicensed use of Pronto by Louisville, abandoned its copyright, granted an implied license to Louisville to use Pronto, or is in any way estopped from asserting its copyright claims against Louisville, I deny Louisville's defenses to plaintiff's motion for summary judgment on the issue of liability for copyright infringement.

IV. <u>Defendant's Motion for Summary Judgment</u>.

Defendant contends that Clinical Insight breached the 2006 Licensing Agreement by failing to provide a working version of the billing module. For the reasons stated above, Louisville's motion is denied. Clinical Insight was contractually obligated to supply a billing module that conformed to the written description of billing module it provided. Louisville has failed to provide

evidence that the billing module did not conform to the written documentation describing the software, and has therefore failed to establish a breach of contract. To the extent that the billing module did not perform to Louisville's expectations, the Licensing Agreement specifically disclaimed any obligation on the part of Clinical Insight to provide a module that met Louisville's expectations. The evidence shows that Dr. Schwarz designed a billing module, and Clinical Insight delivered a module that accomplished the task of importing a billing code from a patient's electronic records into a billing statement. There is no evidence that Louisville (prior to Dr. Schwarz's development of Pronto*Exchange*) asked for, or that Clinical Insight promised to deliver a billing module that imported multiple billing codes. As stated above, the MicroMD software program used by Louisville, upon which Dr. Schwarz based Pronto*Exchange*, utilized only a single billing code, and Dr. Schwarz replicated that functionality in his Pronto software. That Louisville later expressed a desire to have multiple codes imported from patient records into billing statements does not establish that Clinical Insight breached the Licensing Agreement by delivering a software program that could only import a single billing code. Accordingly, defendant's motion for summary judgment on its claim that Clinical Insight breached the Licensing Agreement by providing a billing module that did not meet Louisville's expectations is denied.

V.    <u>Clinical Insight's request for Injunctive Relief</u>.

Clinical Insight seeks an injunction from the Court ordering Louisville to immediately return all Pronto software and documentation on grounds that plaintiff has demonstrated that Louisville has violated its copyright, and is continuing to violate its copyright.  Louisville objects to the plaintiff's motion on grounds that up to 40,000 patient records are stored in the Pronto system, and any court order prohibiting Louisville from accessing the records would seriously jeopardize the health of patients whose records remain stored in the Pronto System.  Louisville contends that after it was taken over by Baptist in December 2010, the practice no longer used Pronto for new patient records, and began the process of transferring patient records from Pronto to the records management system used by Baptist.  According to Louisville, because it is absolutely critical that the medical records, dealing with cardiological health, be transferred with complete accuracy, the process of converting the records has been painstaking.  Louisville contends that it is committed to the process of converting the records, and discontinuing its use of Pronto once the records are transferred.

Clinical Insight disputes Louisville's representations regarding its transfer of medical records.  Plaintiff notes that in March, 2011, Louisville represented that it would take "two months or more" to transfer the remaining records stored in the Pronto

format. According to Clinical Insight, Louisville's continued violation of its copyright constitutes irreparable harm and warrants the imposition of injunctive relief.

While I find that Clinical Insight is entitled as a matter of law to injunctive relief, I find that the equitable consideration of potential harm to patients if Louisville is no longer able to access patient medical records, and the likely change in facts since the instant motion was filed, warrants an Order to Show Cause directed to the parties to determine whether or not injunctive relief should be granted. The instant motion for injunctive relief was submitted to the Court in August of 2012, and the facts supporting the motion have likely changed, if indeed, as Louisville has represented, it has been converting its medical records from Pronto to another records management system. If Louisville has been converting its files, it potentially has no additional patient records stored in Pronto, and there would be no impediment to Louisville returning the software.

Accordingly, I Order the parties to Show Cause in writing no later than July 25, 2013 as to why injunctive relief ordering Louisville to return all Pronto software and documentation should not be granted. The parties are directed to address only the equitable concern of patient safety, and not the legal issue of whether or not Clinical Insight is entitled to an injunction as a matter of law. This court finds, based on Louisville's

infringement of Clinical Insight's copyright that Clinical Insight is entitled to an injunction. The only issue the Court will consider is whether or not an injunction would unduly compromise patient safety, and whether Louisville has taken appropriate measures to protect patient safety in light of its knowledge that it has been subject to the possibility of a court-ordered injunction requiring it to cease use of Pronto.

<u>CONCLUSION</u>

For the reasons set forth above, I grant plaintiff's motion for summary judgment, and deny defendant's motion for summary judgment. I further Order the parties to Show Cause in writing no later than July 25, 2013 why an Order granting plaintiff's motion for injunctive relief should not be granted.


ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          July 12, 2013